IN THE CIRCUIT COURT OF ST. LOUIS COUNTY ᴍᴀʀ -8  ᴘʜ 1:31
STATE OF MISSOURI

| | | |
|---|---|---|
| FLEISHMAN-HILLARD INC., | ) | |
| a Delaware corporation, | ) | Cause No: |
| | ) | |
| Plaintiff, | ) | Division: 10SL CC00972 |
| | ) | |
| vs. | ) | |
| | ) | |
| BRADY OMAN | ) | |
| | ) | |
|     Serve Defendant: | ) | |
|     3102 Barton Point Drive | ) | |
|     Austin, TX 78733 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HAL JONES | ) | |
| | ) | |
|     Serve Defendant: | ) | |
|     14094 Bee Cave Road | ) | |
|     Austin, TX 78669 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RED MCCOMBS | ) | |
| | ) | |
|     Serve Defendant at POE: | ) | |
|     755 East Mulberry Avenue | ) | |
|     Suite 600 | ) | |
|     San Antonio, TX 78212 | ) | |
| | ) | |
| Defendants. | ) | |

## PETITION

COMES NOW Plaintiff Fleishman-Hillard Inc. (hereinafter known as "Plaintiff"),

and states to the court as follows:

    1.    Plaintiff is a corporation in good standing, organized and existing under

and by virtue of the laws of the State of Delaware.

    2.    Defendant Brady Oman is an individual resident of the state of Texas.

3:     Defendant Hal Jones is an individual resident of the state of Texas.

4.     Defendant Red McCombs is an individual resident of the state of Texas.

5.     Defendants Brady Oman, Hal Jones and Red McCombs (hereinafter collectively the "Defendants") are the founding principals, members, and owners of Flagship Group, LLC (hereinafter "Flagship Group"), a Delaware limited liability company formed in December, 2007.

6.     In early 2008, Brady Oman contacted Plaintiff to inquire about public relations and communications services offered by Plaintiff.

7.     Brady Oman represented to Plaintiff that he was the founding member of Flagship Group, a development company that had been retained to manage the design, planning, development, construction, marketing, promotion, sale, management and operation of an exclusive golf development in Punta Brava Mexico. In characterizing Flagship Group's role on the golf development project, Brady Oman led Plaintiff to believe that Flagship Group controlled pre-revenue investment capital that would be used to pay vendors such as Plaintiff.

8.     Brady Oman represented to Plaintiff that the other principals, owners, and members of Flagship Group included Red McCombs and Hal Jones, high net worth individuals with substantial real estate development experience.

9.     Brady Oman represented to Plaintiff that Red McCombs had invested millions of dollars into Flagship Group, which would be used for pre-revenue expenditures on the development project.

10.     Hal Jones and Red McCombs were aware that Brady Oman was making each of the representations set forth in the above paragraphs 7-9, and they authorized him

to act as agent on their behalf and on behalf of Flagship Group in making said
representations. Each of the representations set forth in paragraphs 7-9 were designed by
Defendants to convince Plaintiff that Flagship Group could afford to hire Plaintiff as its
public relations and communications consultant.

11.     Relying on Brady Oman's representations as set forth in paragraphs 7-9,
Plaintiff agreed to become involved in the project and to furnish all of the public relations
and communications services on behalf of the golf development project.

12.     In July, 2008, Flagship Group and Plaintiff entered into a written
consulting agreement (hereinafter the "Agreement") whereby Plaintiff agreed to act as
public relations and communications consultant on Flagship Group's behalf in exchange
for Flagship Group's agreement to pay Plaintiff's fees. The Agreement was entered into
between the parties in the State of Missouri.

13.     Between July 2008 and May 2009, Plaintiff furnished public relations and
communications services to Flagship Group and performed all covenants under the
Agreement.

14.     Flagship Group failed to pay Plaintiff's invoices in accordance with the
terms of the Agreement. As a result, in August 2009 Plaintiff filed a collection lawsuit
against Flagship Group in the Circuit Court of St. Louis County. A true and accurate
copy of Plaintiff's Petition against Flagship Group is attached hereto and incorporated
herein by reference as Exhibit "A".

15.     Following service of the lawsuit, Brady Oman contacted Plaintiff and
made various payment promises as an inducement for Plaintiff to forbear collection
efforts under the pending lawsuit.

16.    Brady Oman subsequently executed and delivered a consent judgment (hereinafter the "Consent Judgment") to Plaintiff, a true and accurate copy of which is attached hereto as Exhibit "B", and incorporated herein by reference. The Consent Judgment was entered into in the State of Missouri.

17.    Pursuant to its terms, the Consent Judgment would only be filed with the court in the event Flagship Group failed to pay 50% of the outstanding balance on or before February 1, 2010.

18.    No payments were received from Flagship Group prior to the February 1, 2010 payment deadline.

19.    By failing to meet the February 1, 2010 payment deadline, Flagship Group defaulted under the terms of the Consent Judgment. As a result, the Consent Judgment was filed with the court and became a final order and judgment on February 3, 2010. A true and accurate copy of the final order and judgment is attached hereto as Exhibit "C", and incorporated herein by reference.

20.    To date, the Consent Judgment remains unsatisfied.

21.    After entering into the Agreement with Flagship Group, and after furnishing valuable public relations services to Flagship Group, Plaintiff learned:

    A. that Flagship Group was merely an unfunded, insolvent shell holding company with no foreseeable sources of revenue;

    B. that Flagship Group's sole asset consisted of a minority interest in Punta Brava, LLC, a limited liability company owned in part by Red McCombs, and owned and/or managed by Brady Oman and Hal Jones;

C. that Punta Brava, LLC is a shell holding company owning 85% of the equity in an entity named Arcos Del Mar, one of two beneficiaries under a Mexican Trust owning the property to be developed;

D. that Red McCombs hadn't invested any capital in Flagship Group, and had no future intentions of doing so;

E. that Red McCombs had always intended to invest his money in Punta Brava, LLC and/or Arcos Del Mar, as opposed to Flagship Group;

F. that Punta Brava, LLC and Arcos Del Mar were structured in such a manner that Red McCombs and other investors would receive priority distributions on their equity investments (amounting to a 100% return of capital together with a premium interest rate) before any funds could ever be distributed to Flagship Group;

G. that Arcos Del Mar, not Flagship Group, possessed all of the authority under the project to manage the design, planning, development, construction, marketing, promotion, sale, management and operation of the golf development;

H. that Flagship Group had no control over the project's pre-revenue investment capital, and had no authority as the so called "developer" to pay project vendors such as Plaintiff; and

I. that Flagship Group was merely a remote beneficiary of Plaintiff's public relations and communications services and that most of Plaintiff's services more directly benefitted such entities as Punta Brava, LLC, Arcos Del Mar, a Mexican Land Trust, and the individual investors of each of the aforesaid.

22.   Jurisdiction is proper in the State of Missouri in that (i) Defendants committed tortious acts in the State of Missouri; (ii) Defendants are the principals, owners, members and alter egos of Flagship Group; (iii) Flagship Group entered into a contract with Plaintiff in the State of Missouri; (iv) Flagship Group transacted business with Plaintiff in the State of Missouri; (v) pursuant to Section 14(4) of the Agreement Flagship Group expressly consented to litigate any disputes in the State of Missouri; (vi) Defendants directly or indirectly sent payments to Plaintiff in the State of Missouri on account of Flagship Group's indebtedness; and (vii) Flagship Group consented to this court's jurisdiction when it presented the court with a Consent Judgment.

## COUNT I – INTENTIONAL MISREPRESENTATION

23.   Plaintiff restates and realleges the above paragraphs 1-22 as if fully set forth herein.

24.   Plaintiff's claim for intentional misrepresentation against Defendants arises out of the following: (i) Brady Oman made false, material representations to Plaintiff; (ii) each of the false and material representations made by Brady Oman were made while acting as agent for the Defendants and Flagship Group; (iii) Defendants knew such representations were untrue; (iv) Defendants intended that the false representations would be relied upon by Plaintiff in making a determination whether to become involved in the development project; (v) Plaintiff at all times remained ignorant that the representations were false; (vi) Plaintiff possessed a right to rely upon the truth and accuracy of the representations; (vii) Plaintiff did in fact rely upon the truth and accuracy of the representations in making a determination as to whether to become involved in the

project; and (viii) as a direct and proximate result of Plaintiff's reliance upon the false and material representations, Plaintiff suffered damages.

25.    Defendants, by and through Brady Oman, made false and material representations to Plaintiff by representing: (i) that Flagship Group had been retained to manage the design, planning, development, construction, marketing, promotion, sale, management and operation of an exclusive golf development in Punta Brava Mexico; (ii) that Flagship Group controlled pre-revenue investment capital that would be used to pay vendors such as Plaintiff; and (ii) that Red McCombs had invested millions of dollars into Flagship Group which would be used for pre-revenue expenditures on the development project.

26.    Each of the false and material representations made by Brady Oman were made while acting as agent for the Defendants and Flagship Group and in furtherance of their common scheme to obtain valuable public relations and communications services without paying for said services.

27.    At all times relevant hereto, Defendants was aware that the foregoing representations were false.

28.    Defendants intended that the false representations would be relied upon by Plaintiff in making a determination whether to become involved in the development project. Defendants understood that Plaintiff would not extend credit to an insolvent entity, and that the only way to induce Plaintiff to provide services on account would be if Plaintiff believed that Flagship Group was well capitalized and possessed revenue potential.

29.    Plaintiff at all times remained ignorant that the representations were false.

30.     Plaintiff possessed a right to rely upon the truth and accuracy of the representations made by Brady Oman, in that such representations were transmitted in the course of a business negotiation.

31.     Plaintiff did in fact rely upon the truth and accuracy of the representations made by Brady Oman in making a determination as to whether to become involved in the project, all as evidenced by the substantial services furnished by Plaintiff on Flagship Group's behalf.

32.     As a direct and proximate result of Plaintiff's reliance upon the false and material representations made by Brady Oman, Plaintiff has and will continue to suffer damages.

33.     The conduct of Defendants was willful, wanton, deliberate, and/or malicious, and was outrageous because it was undertaken with an evil motive and reckless indifference to the rights of Plaintiff, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount equivalent to the current balance of principal and interest owed to Plaintiff under the Consent Judgment, together with an award of Plaintiff's reasonable attorney's fees and costs expended herein, punitive damages, and for such other and further relief as the Court deems just under the circumstances.

**COUNT II – NEGLIGENT MISREPRESENTATION**

34.     Plaintiff incorporates by reference the above Paragraphs 1 through 33 as if fully set forth herein.

35.     Plaintiff's claim for negligent misrepresentation against Defendants arises out of the following: (i) Defendants, in their efforts to induce Plaintiff to provide public relations and communications services to Flagship Group, directed Brady Oman to make false and material representations to Plaintiff; (ii) due to his failure to exercise reasonable care or competence in communicating with Plaintiff, the representations made by Brady Oman were false; (iii) Brady Oman intentionally conveyed the information to Plaintiff for the limited purpose of convincing Plaintiff to furnish public relations and communications services to Flagship Group; (iv) Plaintiff justifiably relied on the representations made by Brady Oman; and (v) as a direct and proximate result of Plaintiff's reliance on the representations made by Brady Oman, Plaintiff suffered damages.

36.     While soliciting Plaintiff's public relations and communications services, Defendants, by and through Brady Oman, made false and material representations to Plaintiff by representing that: (i) that Flagship Group had been retained to manage the design, planning, development, construction, marketing, promotion, sale, management and operation of an exclusive golf development in Punta Brava Mexico; (ii) that Flagship Group controlled pre-revenue investment capital that would be used to pay vendors such as Plaintiff; and (ii) that Red McCombs had invested millions of dollars into Flagship Group which would be used for pre-revenue expenditures on the development project.

37.     Due to his failure to exercise reasonable care or competence in communicating with Plaintiff, the representations made by Brady Oman were false.

- 9 -

38.     Brady Oman intentionally conveyed the information to Plaintiff for the limited purpose of convincing Plaintiff to furnish public relations and communications services to Flagship Group.

39.     Plaintiff justifiably relied on the representations made by Brady Oman, in that such representations were transmitted in the course of a business negotiation.

40.     As a direct and proximate result of Plaintiff's reliance upon the false and material representations made by Brady Oman, Plaintiff has and will continue to suffer damages.

41.     The conduct of Defendants was willful, wanton, deliberate, and/or malicious, and was outrageous because it was undertaken with an evil motive and reckless indifference to the rights of Plaintiff, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount equivalent to the current balance of principal and interest owed to Plaintiff under the Consent Judgment, together with an award of Plaintiff's reasonable attorney's fees and costs expended herein, punitive damages, and for such other and further relief as the Court deems just under the circumstances.

## COUNT III – PIERCING THE VEIL

42.     Plaintiff incorporates by reference the above Paragraphs 1 through 41 as if fully set forth herein.

43.     Plaintiff is asking this court to invoke its equitable powers and "pierce the veil" of Flagship Group to hold the individual principals, owners and members of Flagship Group personally liable under the Consent Judgment.  In support thereof,

Plaintiff asserts that Flagship Group is merely the alter ego of the individual defendants Brady Oman, Hal Jones, and Red McCombs.

44.     Upon information and belief, neither Brady Oman, Red McCombs, nor Hal Jones invested any meaningful capital to fund the operations of Flagship Group.

45.     Upon information and belief, at all times relevant to this litigation Flagship Group was insolvent.

46.     Plaintiff never received a single payment from Flagship Group.  The few payments that Plaintiff received for its work on the project were paid by: (i) MOJO Property Ventures, LLC, an entity whose members and/or managers include Brady Oman, Hal Jones and Red McCombs; and (ii) Nextcorp Capital Management, LLC, an unknown entity.

47.     Defendants failed to respect the separate corporate existence of Flagship Group inasmuch as they failed to adequately capitalize Flagship Group to meet its obligations, and inasmuch as they directed other business entities controlled by them to pay portions of Flagship Group's indebtedness.

48.     Upon information and belief, Defendants also failed to respect the separate corporate existence of Flagship Group by directing other business entities controlled by them to satisfy Flagship Group's payroll obligations to its employees.

49.     Upon information and belief, Defendants failed to respect corporate formalities of Flagship Group, to wit: (i) Defendants failed to register Flagship Group as a foreign limited liability company in states in which it purported to conduct business; and (ii) Defendants failed to cause Flagship Group to maintain accurate and up to date

financial reports reflecting member contributions, company expenses, accrued liabilities etc.

50.     At the time that Flagship Group entered into the Agreement with Plaintiff, Defendants each understood that Flagship Group had no source of revenue and that Flagship Group would be incapable of satisfying its obligations under the Agreement.

51.     The corporate existence of Flagship Group is a mere sham designed to: (i) defraud creditors while enhancing the value of the Defendants' direct and/or indirect ownership interests in Punta Brava, LLC, Arcos Del Mar, and/or the Mexican Trust; (ii) further a scheme whereby Red McCombs and other investors receive distributions on their equity investments prior to any payments to project vendors (including Plaintiff), all in violation of applicable limited liability company statutes; and (iii) induce Plaintiff to furnish valuable public relations and communications services without any prospect of being compensated. In other words, Flagship Group simply functioned as a façade for the Defendants as individuals.

52.     This court should invoke its equitable powers and attribute the liability of Flagship Group under the Consent Judgment to each of the Defendants, jointly and severally.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount equivalent to the current balance of principal and interest owed to Plaintiff under the Consent Judgment, together with an award of Plaintiff's reasonable attorney's fees and costs expended herein, and for such other and further relief as the Court deems just under the circumstances.

### COUNT IV -- QUANTUM MERUIT/UNJUST ENRICHMENT

53.    Plaintiff restates and realleges the above paragraphs 1-52 as if fully set forth herein.

54.    After Plaintiff had contracted with Flagship Group, and after Plaintiff had furnished substantial services on the project, Plaintiff discovered that Flagship Group was merely a remote beneficiary of Plaintiff's public relations and communications services, and that most of Plaintiff's services more directly benefitted such entities as Punta Brava, LLC, Arcos Del Mar, a Mexican Land Trust, and the individual investors of each of the aforesaid.

55.    At the specific instance and request of Brady Oman, Plaintiff provided valuable services and incurred out of pocket expenses which have directly the Defendants by enhancing the value of their respective ownership interests in Punta Brava, LLC, Arcos Del Mar, and the Mexican Land Trust.

56.    The reasonable value of the services and out of pocket expenses for which Defendants have not paid Plaintiff, is Four Hundred Twenty Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90).

57.    It would be unjust to allow Defendants to retain the benefit of Plaintiff's services and expenditures without paying for the reasonable value thereof.

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, for the reasonable value of Plaintiff's services and expenditures under the equitable doctrines of quantum meruit and unjust enrichment in the amount of Four Hundred Twenty Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents

($420,327.90), together with court costs, and all other appropriate relief which the court

deems just.

Respectfully submitted,

**AEGIS PROFESSIONAL SERVICES –
LAW PRACTICE GROUP**

By: _____

Nicholas B. Schopp #51182
#2 North Meramec
Clayton, MO 63105
*Attorneys for Fleishman-Hillard Inc.*
(314) 454-9100
(314) 454-9110 fax
nschopp@aegisps.com

# EXHIBIT A

# (PETITION)

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

FLEISHMAN-HILLARD INC.,                    )
a Delaware corporation,                    )
                                           )     Cause No.
           Plaintiff,                      )     09SL-CC03707
                                           )     Division:
vs.                                        )
                                           )
FLAGSHIP GROUP, LLC,                       )
a Delaware limited liability company,      )
                                           )
      Serve Registered Agent:              )
      The Corporation Trust Company        )
      Corporation Trust Center             )
      1209 Orange Street                   )
      Wilmington, DE 19801                 )
                                           )
           Defendant.                      )

2009 AUG 26  AM 10: 52

JOAN M. GILMER
CIRCUIT CLERK

**PETITION**

COMES NOW Plaintiff Fleishman-Hillard Inc. (hereinafter known as "Plaintiff"),

and states to the court as follows:

1.     Plaintiff is a corporation in good standing, organized and existing under

and by virtue of the laws of the State of Delaware.

2.     Defendant Flagship Group, LLC (hereinafter known as "Defendant") is a

Delaware limited liability company with a principal place of business located at 750 B.

Street, Floor 31, San Diego CA 92101.

3.     . In July, 2008, Defendant and Plaintiff entered into a consulting agreement

(hereinafter the "Agreement") whereby Plaintiff agreed to act as public relations and

communications consultant on Defendant's behalf in exchange for Defendant's agreement

to pay Plaintiff's fees.  Section 3 of the Agreement contains a confidentiality clause, and

Plaintiff is therefore electing to file the Agreement under seal.  A true and accurate copy

of the Agreement is filed under seal herewith as Exhibit "A", and incorporated herein by reference. The Agreement was entered into between the parties in the State of Missouri.

4.    Jurisdiction is proper in the State of Missouri in that (i) Defendant transacted business with Plaintiff in the State of Missouri; (ii) Defendant entered into a contract with Plaintiff in the State of Missouri; (iii) Defendant mailed payments to Plaintiff in the State of Missouri; and (iv) pursuant to Section 14(4) of the Agreement Defendant expressly consented to litigate any disputes in the State of Missouri.

5.    Pursuant to R.S.Mo § 508.010(4), venue is proper in St. Louis County, Missouri.

### COUNT I – BREACH OF CONTRACT

6.    Plaintiff restates and realleges the above paragraphs 1-5 as if fully set forth herein.

7.    Pursuant to the terms of the Agreement, Plaintiff provided valuable professional services and materials to Defendant and has performed all of its obligations related thereto.

8.    Plaintiff mailed invoices to Defendant for Plaintiff's professional fees and out-of-pocket expenses.

9.    Defendant has failed to pay for the professional fees and out-of-pocket expenses of Plaintiff, all as more specifically set forth in the following table, to wit:

| Invoice # | Invoice Date | Type | Check # | Amount |
|---|---|---|---|---|
| 1436976 | 10/14/2008 | Invoice | | $ 50,020.00 |
| 1436976 | 10/14/2008 | Payment | 370216863 | $ (25,000.00) |
| 1440202 | 11/9/2008 | Invoice | | $151,777.75 |
| 1440203 | 11/9/2008 | Invoice | | $ 23,121.63 |
| 1443240 | 12/4/2008 | Invoice | | $ 46,024.00 |
| 1443241 | 12/4/2008 | Invoice | | $ 6,391.05 |
| 1446852 | 1/6/2009 | Invoice | | $ 59,641.25 |
| 1446854 | 1/6/2009 | Invoice | | $ 4,716.88 |
| 1449618 | 2/2/2009 | Invoice | | $ 16,750.00 |

| 1449619 | 2/2/2009 | Invoice | | $   8,385.06 |
| 1450879 | 2/19/2009 | Invoice | | $ 42,858.44 |
| 1453324 | 3/5/2009 | Invoice | | $ 16,032.50 |
| 1453325 | 3/5/2009 | Invoice | | $   1,368.13 |
| 1455991 | 3/31/2009 | Invoice | | $   2,507.50 |
| 1455992 | 3/31/2009 | Invoice | | $   2,797.47 |
| 1458506 | 5/1/2009 | Invoice | | $ 12,936.24 |
| | Total | | | $420,327.90 |

10.    Each of the unpaid invoices as depicted in the foregoing table are collectively filed under seal herewith as Exhibit "B", and incorporated herein by reference.

11.    Plaintiff has demanded payment of the above invoices and Defendant refuses to pay.

12.    The total amount due and owing to Plaintiff on account of the above invoices, is Four Hundred Twenty Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90).

13.    Plaintiff has performed all conditions precedent to its duty of enforcement against the Defendant.

WHEREFORE, Plaintiff prays for judgment against the Defendant in the sum of Four Hundred Twenty Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90), together with interest at the contractual rate of 18% per annum, reasonable attorney's fees and court costs, and such other and further relief as the Court deems just.

## COUNT II -- SUIT ON ACCOUNT

14.    Plaintiff restates and realleges the above paragraphs 1-13 as if fully set forth herein.

15.   In July, 2008, Defendant requested Plaintiff to provide public relations and communications services to Defendant.

16.   Defendant agreed to pay Plaintiff the fair and reasonable value of the services furnished by Plaintiff on Defendant's account.

17.   Defendant also agreed to pay Plaintiff the fair and reasonable value of Plaintiff's out of pocket expenses incurred while performing work for Defendant.

18.   Between July 2008 and May 2009, Plaintiff, at the specific request and insistence of Defendant, furnished public relations and communications services to Defendant under one continuous, running account. A statement of account depicting all unpaid charges on Defendant's account is set forth as follows:

| Invoice # | Invoice Date | Type | Check # | Amount |
|---|---|---|---|---|
| 1436976 | 10/14/2008 | Invoice | | $ 50,020.00 |
| 1436976 | 10/14/2008 | Payment | 370216863 | $ (25,000.00) |
| 1440202 | 11/9/2008 | Invoice | | $151,777.75 |
| 1440203 | 11/9/2008 | Invoice | | $ 23,121.63 |
| 1443240 | 12/4/2008 | Invoice | | $ 46,024.00 |
| 1443241 | 12/4/2008 | Invoice | | $ 6,391.05 |
| 1446852 | 1/6/2009 | Invoice | | $ 59,641.25 |
| 1446854 | 1/6/2009 | Invoice | | $ 4,716.88 |
| 1449618 | 2/2/2009 | Invoice | | $ 16,750.00 |
| 1449619 | 2/2/2009 | Invoice | | $ 8,385.06 |
| 1450879 | 2/19/2009 | Invoice | | $ 42,858.44 |
| 1453324 | 3/5/2009 | Invoice | | $ 16,032.50 |
| 1453325 | 3/5/2009 | Invoice | | $ 1,368.13 |
| 1455991 | 3/31/2009 | Invoice | | $ 2,507.50 |
| 1455992 | 3/31/2009 | Invoice | | $ 2,797.47 |
| 1458506 | 5/1/2009 | Invoice | | $ 12,936.24 |
| | Total | | | $420,327.90 |

19.   All of the fees and out of pocket expenses charged to Defendant as set forth hereinabove are fair and reasonable.

- 4 -

20.     Defendant failed, neglected, and refused to pay Plaintiff the full amount of the account despite frequent demands for payment. As a direct result of Defendant's failure to pay Plaintiff the principal sum of Four Hundred Twenty Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90) on its account for the unpaid services performed by Plaintiff, Plaintiff has been damaged in that amount.

WHEREFORE, Plaintiff prays for judgment against the Defendant in the sum of Four Hundred Twenty Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90), together with interest at the contractual rate of 18% per annum, reasonable attorney's fees and court costs, and such other and further relief as the Court deems just.

## COUNT III – QUANTUM MERUIT/UNJUST ENRICHMENT

21.     Plaintiff restates and realleges the above paragraphs 1-20 as if fully set forth herein.

22.     At the specific instance and request of Defendant, Plaintiff provided valuable services which have directly benefited Defendant.

23.     At the specific instance and request of Defendant, Plaintiff incurred significant out of pocket expenses while working on Defendant's behalf.

24.     Defendant has refused to pay Plaintiff for the reasonable value of Plaintiff's services and out of pocket expenses.

25.     The reasonable value of the services and out of pocket expenses for which Defendant has not paid Plaintiff, is Four Hundred Twenty Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90).

26.     It would be unjust to allow Defendant to retain the benefits of Plaintiff's services and expenditures without paying for the reasonable value thereof.

WHEREFORE, Plaintiff requests judgment against Defendant for the reasonable value of Plaintiff's services and expenditures under the equitable doctrines of quantum meruit and unjust enrichment in the amount of Four Hundred Twenty Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90), together with court costs, and all other appropriate relief which the court deems just.

Respectfully submitted,

AEGIS PROFESSIONAL SERVICES –
LAW PRACTICE GROUP

By: _____

Nicholas B. Schopp #51182
#2 North Meramec
Clayton, MO 63105
*Attorneys for Fleishman-Hillard Inc.*
(314) 454-9100
(314) 454-9110 fax
nschopp@aegisps.com

# EXHIBIT A

# (FILED UNDER SEAL)

# EXHIBIT B

# (FILED UNDER SEAL)

# EXHIBIT B

# (CONSENT JUDGMENT)

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

# FILED

FLEISHMAN-HILLARD INC.,
a Delaware corporation,

    Plaintiff,

vs.

FLAGSHIP GROUP, LLC,
a Delaware limited liability company,

    Defendant.

Cause No: 09SL-CC03762  FEB 0 3 2010

Division: 2    JOAN M. GILMER
          CIRCUIT CLERK: ST. LOUIS COUNTY

## CONSENT JUDGMENT

It is agreed by and between the parties hereto that there is now due and owing to Fleishman-Hillard Inc. (hereinafter "Plaintiff") from Flagship Group, LLC (hereinafter "Defendant") as to Plaintiff's petition, the principal sum of Four Hundred Twenty-Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90), together with interest in the amount of Fifty-Four Thousand Five Hundred Forty-Six Dollars and Fifty-Six Cents ($54,546.56), together with attorney's fees in the amount of One Thousand Six Hundred Sixty-Five Dollars ($1,665.00), together with all court costs, and therefore a Consent Judgment may be entered by the Court in favor of Plaintiff and against Defendant, in the amount of Four Hundred Seventy-Six Thousand Five Hundred Thirty-Nine Dollars and Forty-Six Cents ($476,539.46), plus costs of court. Interest on all unpaid amounts shall accrue at the contractual rate of eighteen percent (18%) per annum beginning on the date first set forth below.

It is further agreed by and between the parties hereto that the above-captioned cause shall be placed on an administrative stay docket and that this Consent Judgment shall NOT be entered as a final judgment so long as Defendant makes a payment to Plaintiff's

undersigned counsel of at least fifty percent (50%) of the outstanding balance on or before the 1st day of February, 2010, and the remainder of the outstanding balance on or before the 1st day of April, 2010, at which time Plaintiff shall dismiss its cause with prejudice at Plaintiff's cost and provide Defendant with a file-stamped copy of same.

It is further agreed by and between the parties hereto that in the event Plaintiff shall fail to timely receive any payment due under this Consent Judgment, Plaintiff, at it's option, may declare Defendant to be in default, present this Consent Judgment to the Court for entry into the Court's permanent record (Defendant shall be properly credited for any payments received up to the date of default), and engage in any post-judgment collection activities available by law, and failure of Plaintiff to exercise this option at any time shall not be construed to constitute a waiver of same. In the event of a default, Plaintiff shall be entitled to recoup all attorney's fees and court costs expended from the date of such default, together with interest at the rate of 18% per annum from the date of default.

Payments shall be made payable to Fleishman-Hillard Inc., and delivered to the office of Plaintiff's counsel, Aegis Professional Services, Attn: Nicholas B. Schopp, #2 North Meramec, Clayton, MO 63105.

**FLAGSHIP GROUP, LLC**                    **FLEISHMAN-HILLARD INC.**

By: _____              By: _____
Brady Oman, its _Preskdent_                  Nicholas B. Schopp, its attorney

_11-16-09_____                  November 6, 2009_____
Dated                                         Dated

- 2 -

# EXHIBIT C

# (FINAL ORDER AND JUDGMENT)

In the
# CIRCUIT COURT
of St. Louis County, Missouri

Fleishman-Hillard Inc.
Plaintiff(s)

vs.

FLAGSHIP GROUP, LLC
Defendant(s)

Date  2/3/10

0952-CC03707
Case Number

2
Division

**FILED**

FEB 0 3 2010

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

For File Stamp Only

## FINAL ORDER AND JUDGMENT

Plaintiff has presented the court with an original consent judgment, which is attached hereto and incorporated herein by reference. Plaintiff has represented to the court that Defendant has defaulted under the terms of the attached consent judgment, by failing to make payment on or before February 1, 2010. The court hereby orders that the attached consent judgment be entered into the court's permanent record as a Final ORDER and Judgment in favor of Plaintiff and against Defendant, in the amount of $476,539.46, plus costs of court. Post-judgment interest to accrue at the rate of 18% per annum.

CC: Routt Thornhill, sent by
Plaintiff's attorney Nick Schopp

**SO ORDERED**

_Maura B. McShane_
Judge

ENTERED: 2/3/10
(Date)

CCOPR47  Rev. 5/95

NICK SCHOPP                         51182
Attorney                              Bar No.

2 N. MERAMEC  CLAYTON MO 63105
Address

454-9100 X5              454-9110
Phone No.                            Fax No.

_____    _____
Attorney                              Bar No.

_____
Address

_____    _____
Phone No.                            Fax No.

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

**FILED**

FLEISHMAN-HILLARD INC.,
a Delaware corporation,

        Plaintiff,

vs.

FLAGSHIP GROUP, LLC,
a Delaware limited liability company,

        Defendant.

Cause No: 09SL-CC03769 0 3 2010

Division: 2     **JOAN M. GILMER**
**CIRCUIT CLERK, ST. LOUIS COUNTY**

### CONSENT JUDGMENT

It is agreed by and between the parties hereto that there is now due and owing to Fleishman-Hillard Inc. (hereinafter "Plaintiff") from Flagship Group, LLC (hereinafter "Defendant") as to Plaintiff's petition, the principal sum of Four Hundred Twenty-Thousand Three Hundred Twenty-Seven Dollars and Ninety Cents ($420,327.90), together with interest in the amount of Fifty-Four Thousand Five Hundred Forty-Six Dollars and Fifty-Six Cents ($54,546.56), together with attorney's fees in the amount of One Thousand Six Hundred Sixty-Five Dollars ($1,665.00), together with all court costs, and therefore a Consent Judgment may be entered by the Court in favor of Plaintiff and against Defendant, in the amount of Four Hundred Seventy-Six Thousand Five Hundred Thirty-Nine Dollars and Forty-Six Cents ($476,539.46), plus costs of court.   Interest on all unpaid amounts shall accrue at the contractual rate of eighteen percent (18%) per annum beginning on the date first set forth below.

It is further agreed by and between the parties hereto that the above-captioned cause shall be placed on an administrative stay docket and that this Consent Judgment shall NOT be entered as a final judgment so long as Defendant makes a payment to Plaintiff's

undersigned counsel of at least fifty percent (50%) of the outstanding balance on or before the 1st day of February, 2010, and the remainder of the outstanding balance on or before the 1st day of April, 2010, at which time Plaintiff shall dismiss its cause with prejudice at Plaintiff's cost and provide Defendant with a file-stamped copy of same.

It is further agreed by and between the parties hereto that in the event Plaintiff shall fail to timely receive any payment due under this Consent Judgment, Plaintiff, at it's option, may declare Defendant to be in default, present this Consent Judgment to the Court for entry into the Court's permanent record (Defendant shall be properly credited for any payments received up to the date of default), and engage in any post-judgment collection activities available by law, and failure of Plaintiff to exercise this option at any time shall not be construed to constitute a waiver of same. In the event of a default, Plaintiff shall be entitled to recoup all attorney's fees and court costs expended from the date of such default, together with interest at the rate of 18% per annum from the date of default.

Payments shall be made payable to Fleishman-Hillard Inc., and delivered to the office of Plaintiff's counsel, Aegis Professional Services, Attn: Nicholas B. Schopp, #2 North Meramec, Clayton, MO 63105.

**FLAGSHIP GROUP, LLC**          **FLEISHMAN-HILLARD INC.**

By: _____          By: _____
Brady Oman, its *President*                  Nicholas B. Schopp, its attorney

11-16-09                                           November 6, 2009
_____          _____
Dated                                              Dated

-2-

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

CCADM73

(2) **Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

(3) **Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

SESSION: RP-COI/11730/1                                                                                          RUN:      04/05/10
CONTROL: 512780                                                                                                  TIME:     15:16:03
Q/O/L:   ALL                                                                                                     PAGE:            2
                                                                                                                OPERATOR: MJOHNSON

                              Thornton, Biechlin, Segrato, Reynolds & Guerra, L.C.
                                           CONFLICT OF INTEREST REPORT
                                      REQUESTING ATTORNEY: RJ Reynolds, III
                                            CLIENT BEING CHECKED: RRB

The following search values were used within this report.  Each value is preceded by a count of matching conflict columns.

        0  -flagship group-
        0  -fleishman-
        0  -fleishman-hillard-
        0  -hillard, inc-
        0  -jones, hal-
        0  -mccombs, red-
        0  -oman, br-